KAPLAN LEVENSON P.C.
*Attorneys for Creditor Spring Bank*
930 Sylvan Avenue, Suite 100
Englewood Cliffs, NJ 07632
212.842.2020
Steven M. Kaplan, Esq.
smk@kaplev.com

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| CHANGAR REALTY CORP., | Case No. 1-24-11350 (JPM) |
| Debtor. | |

-----------------------------------------------------------X

**MOTION OF SPRING BANK
FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. §362**

Spring Bank moves pursuant to Section 362 of Title 11 of the United States Code (the "Bankruptcy Code") for relief from the automatic stay to allow Spring Bank to continue to prosecute a foreclosure action pending against 2467 Realty Corp. ("2467 Realty"), Changar Realty Corp. ("Debtor") Carlos M. Garcia and Elba Fournier in the Supreme Court of the State of New York, County of Bronx, captioned <u>Spring Bank v. 2467 Realty Corp., et al.</u>, Index No. 812295/2023E a (the "NY Foreclosure Action"). The NY Foreclosure Action is a commercial foreclosure action seeking to foreclosure on a mortgage held by Spring Bank which encumbers the commercial property located at 2467 Valentine Avenue, Bronx, NY 10458 ("the "Property"). The Property is owned solely by 2467 Realty and is a fully occupied, multi-family residential building. Debtor, Garcia and Fournier are parties to the NY Foreclosure Action solely in their capacity as guarantors of a loan made by Spring Bank to 2467 Realty. Debtor has no interest in the Property, and the Court should lift the automatic stay so that the NY Foreclosure Action may proceed.

**STATEMENT OF FACTS**

On July 16, 2013, 2467 Realty and Debtor executed and delivered a mortgage with respect to multiple properties they own located at 1704-1714 University Avenue, and 2467 Valentine Avenue, Bronx, NY in favor of Valentine & University Funding Associates (the "Original Mortgagee") in the principal amount of $2,525,000 (the "Valentine Mortgage"), which was recorded with the City Register of the City of New York on July 30, 2013 as CRFN 2013000299059. A copy of the Valentine Mortgage is annexed hereto as **Exhibit A**.

On May 13, 2015, Spring Bank loaned one million, six hundred thousand and eighty-eight thousand, five hundred dollars ($1,688,500.00) to 2467 Realty (the "Loan"). To evidence the Loan, 2467 Realty executed an amended and restated promissory note in favor of Spring Bank (the "Amended and Restated Note") with a stated maturity date of May 13, 2020. A copy of the Amended and Restated Note is annexed hereto as **Exhibit B**.

By assignment of mortgage dated April 6, 2015, the Original Mortgagee assigned the Valentine Mortgage to Spring Bank, which assignment was recorded with the City Register of the City of New York on June 10, 2015 as CRFN 2015000197055. A copy of the assignment is annexed hereto as **Exhibit C**. By Note and Mortgage Splitter and Severance Agreement dated May 13, 2015, which was recorded with the City Register of the City of New York on June 10, 2015 as CRFN 2015000197056, the Valentine Mortgage was split and severed into (i) Substitute Mortgage A made by 2467 Realty to Spring Bank in the amount of $1,262,500.00 with respect to the Property, and was recorded with the City Register of New York on Jun 10, 2015 as CRFN 2015000197058 (the "First 2467 Mortgage") and (ii) Substitute Mortgage B made by Debtor to Spring Bank in the amount of $1,262,500.00 with respect to the property located at 1704-1714 University Avenue, Bronx, NY, which was recorded with the City Register of the City of New York on June 10, 2015 as CRFN 2015000197057 (the "First Changar Mortgage"). A copy of the

Note and Mortgage Splitter and Severance Agreement with the First 2467 Mortgage and the First Changar Mortgage are annexed collectively hereto as **Exhibit D**.

On May 13, 2015, 2467 Realty executed and delivered a second mortgage with respect to the Property in favor of Spring Bank in the principal amount of $426,000 which was recorded with the City Register of the City of New York on July 21, 2015 as CRFN 2015000250429 (the "Second 2467 Mortgage"). A copy of the Second 2467 Mortgage is annexed hereto as **Exhibit E**.

On May 13, 2015, 2467 Realty and Spring Bank executed a Consolidation, Modification and Extension Agreement, which consolidated the First 2467 Mortgage and the Second 2467 Mortgage in the total amount of $1,688,500, which was recorded with the City Register of the City of New York on July 21, 2015 as CRFN 2015000250427 (the "Consolidated 2467 Mortgage"). A copy of the Consolidated 2467 Mortgage is annexed hereto as **Exhibit F**. The Consolidated 2467 Mortgage, as modified pursuant to the Extension Agreement and the Mortgage Modification Agreement (defined below) is the mortgage being foreclosed upon in the NY Foreclosure Action and forms the subject of the instant motion.

In consideration of Spring Bank's agreement to make the Loan to 2467 Realty, on May 13, 2015, Debtor, Garcia and Fournier each signed a written personal guaranty whereby they each guaranteed to Spring Bank the full and prompt payment of all amounts due under the aforementioned notes, mortgages, agreements and all other loans, advances, debts, liabilities, obligations, covenants and duties owed by Borrower to Spring Bank (the "2015 Guaranty"). A copy of the 2015 Guaranty is annexed hereto as **Exhibit G**.

On May 28, 2020, 2467 Realty executed a Note and Mortgage Extension Agreement with Joinder of Guarantor with respect to the Property, which was recorded with the City Register of the City of New York on October 21, 2020 as CRFN 2020000292491 (the "Extension

Agreement"), which extended the maturity date of the Amended and Restated Note to August 13, 2020. In consideration of Spring Bank's agreement to extend the Loan, Debtor, Garcia and Fournier each signed a Joinder by Guarantor where they reaffirmed the 2015 Guaranty. A copy of the Extension Agreement is annexed hereto as **Exhibit H**.

On September 25, 2020, 2497 Realty and Spring Bank entered into Amendment No. 1 to the Amended and Restated Note, which in relevant part extended the maturity date until August 13, 2025 (the "First Amendment"). A copy of the First Amendment is annexed hereto as **Exhibit I**.

On September 25, 2020, 2497 Realty and Spring Bank entered into a Mortgage Modification Agreement, with respect to the Property, which was recorded with the City Register of the City of New York on November 6, 2020 as CRFN 2020000310385 (the "Mortgage Modification Agreement"). A copy of the Mortgage Modification Agreement is annexed hereto as **Exhibit J**.

All of the above referenced notes, mortgages, agreements and guaranties are collectively referred to as the "Loan Documents". All of the Loan Documents provide that a default under any Loan Document would constitute a default under all other Loan Documents. 2467 Realty, Debtor, Garcia and Fournier (collectively, jointly and severally referred to herein as the "Obligors" and each an "Obligor") defaulted under the Loan Documents by, among other things failing to pay the principal and interest payments that were due and payable starting on March 13, 2023.

The failures to make these payments when due constituted Events of Default as defined by the Loan Documents. Section 7.1 of the Consolidated 2467 Mortgage provides that Events of Default include failing "to pay when due any installment of interest or principal, Additional

Interest, or any other sums payable under this Agreement, the Note, any other Loan Document, or under any Interest Rate Protection Product". (See **Exhibit F**, §7.1).

By notice dated June 11, 2023, Spring Bank provided written notice to the Obligors that an Event of Default had occurred under the Loan Documents, that it was accelerating the amount due and provided Obligors with five (5) days to pay the entire amount due as of June 9, 2023 of $1,668,887.99, plus *per diem* interest of $768.21 and attorney's fees (the "Default Notice"). A copy of the Default Notice is annexed hereto as **Exhibit K**.

None of the Obligors responded to the Default Notice and never cured the Events of Default. Thus, pursuant to the terms of the Loan Documents, the entire balance of the notes, together with all accrued and unpaid interest and other amounts due under the Loan Documents was automatically accelerated and was immediately due and payable. See **Exhibit F**, §7.2). The total amount due and owing *as of October 31, 2023* was:

| Principal | $1,536,419.47 |
|---|---|
|  |  |
| Default Interest from March 13, 2023 through October 30, 2023 | $66,491.80 |
| Regular Interest @ 11.50% through June 8, 2023 | $124,656.65 |
| Late Charges | $37,125.44 |
| Deferred Extension Fee | $15,997.06 |
| Release Fees | TBD |
| Legal Fees for Preparation of Agreements | $2,750.00 |
| Payoff Charge | $100.00 |
| **TOTAL PAYOFF AS October 31, 2023** | **$1,783,440.42** |

plus *per diem* interest of $768.21 from October 31, 2023, plus additional legal fees, costs and expenses that continue to accrue.

Since the Obligors' default, 2467 Realty has been collecting monthly rent from its tenants, while not paying its obligations under the Loan Documents. Section 7. 5 of the Consolidated 2467 Mortgage provides that, upon an Event of Default, Spring Bank would be automatically

entitled to the appointment of a temporary rent receiver.  (See **Exhibit F**, §7.5 & §7.11)(emphasis added).

Spring Bank commenced the NY Foreclosure Action by service of a summons and complaint on August 10, 2023.  A copy of the summons and complaint is annexed hereto as **Exhibit L**.  On January 19, 2024, Spring Bank filed an order to show cause seeking the appointment of a temporary rent receiver for the Property because an Event of Default had occurred, the Obligors were retaining the rent payments without servicing the Loan and, pursuant to the Loan Documents, Spring Bank was <u>automatically</u> entitled to the immediate appointment of a receiver.

On March 29, 2024, the NY Court *granted* Spring Bank's motion for the appointment of a temporary rent receiver.  A copy of the March 29, 2024 order is annexed hereto as **Exhibit M**.  By order dated June 28, 2024, the NY Court appointed Seth Markowitz as the temporary rent receiver for the Property. A copy of the June 28, 2024 Order is annexed hereto as **Exhibit N**.  On July 29, 2024, the Court advised Spring Bank that Mr. Markowitz could not serve as the receiver, and directed Spring Bank to seek appointment of a new receiver.  A new receiver has not been appointed prior to Debtor's bankruptcy filing.  Additionally, default has been entered against 2467 Realty and Changar in the NY Foreclosure Action due to their failure to respond to the complaint therein. Garcia and Fournier answered the complaint, and Spring Bank will be filing a motion for summary judgment against them.

## ARGUMENT

**I.     THE COURT SHOULD LIFT THE AUTOMATIC STAY**

Pursuant to 11 USC §362(d)(2), the Court shall grant relief from the automatic stay with respect to a stay of an action against property, if (a) the debtor does not have an equity in such

property; and (b) such property is not necessary to an effective reorganization. Spring Bank satisfies these requirements. Pursuant to 11 USC §362(d)(1), the Court can also grant relief from the automatic stay for cause, including the lack of adequate protection of an interest in property of such party in interest.

A. **The Automatic Stay should be Lifted Under 362(d)(2)**

An automatic stay may be lifted under § 362(d)(2) "if (A) the debtor does not have any equity in [the relevant] property; and (B) [the] property is not necessary to an effective reorganization.'" In re Jones, 2024 U.S. Dist. LEXIS 139519 (Bankr. S.D.N.Y. 2024); In re Mader, 2021 U.S. Dist. LEXIS 84366 (E.D.N.Y. Mar. 31, 2021) (quoting 11 U.S.C. § 362(d)(2)). "The creditor bears the burden to show a lack of equity." In re Ehrenfeld, No. 19-CV-8718, 2020 U.S. Dist. LEXIS 178104, 2020 WL 5758819, at *3 (S.D.N.Y. Sept. 28, 2020). "Once lack of equity is established, the burden shifts to the debtor to show that the property is necessary for effective reorganization." Id.

Here, it is undisputed that Debtor does not have any interest -- let alone any equity -- in the Property. The Property is owned by non-debtor 2467 Realty, and 2467 Realty is the sole mortgagor with respect to the Property. Thus, the Property is not necessary to an effective reorganization as it will not receive any proceeds from the eventual sale of the Property, even if there is a surplus.

B. **The Automatic Stay Be Lifted Under 362(d)(1)**

A party moving to lift the stay under Section 362(d)(1) "must initially produce evidence establishing "cause" for the relief he requests." In re Project Orange Assocs., LLC, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010). Once the moving party establishes a *prima facie* case for "cause," the burden shifts to the debtor to disprove its existence. Id.; Burger Boys, Inc. v. South St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 687 (S.D.N.Y. 1994).

Neither Section 362(d)(1), nor the legislative history defines "cause". In re Touloumis, 170 B.R. 825, 828, 830 (Bankr. S.D.N.Y. 1994); In re Project Orange Assocs., 432 B.R. at 102 ("Cause" is an intentionally broad and flexible concept which must be determined on a case-by-case basis). Whether to lift the stay is in the Bankruptcy Court's discretion. Burger Boys, 183 B.R. at 687–88. The legislative history of Section 362 reveals that Congress intended "that one of the factors to consider when determining whether to modify the stay is whether doing so would permit pending litigation involving the debtor to continue in a non-bankruptcy forum," as "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." In re Project Orange Assocs., 432 B.R. at 102. In determining whether "cause" exists to modify or terminate the bankruptcy stay, courts analyze twelve factors enumerated by the Second Circuit in Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990).

"Failure to make mortgage payments is one of the best examples of a lack of adequate protection under Section 362(d)(1) of the Bankruptcy Code and nonpayment constitutes grounds on its own for granting the motion for relief from the automatic stay." In Re Jones, 2024 U.S. Dist. LEXIS 139519, quoting Buczek v. Nationstar Mortg. LLC, 2021 U.S. Dist. LEXIS 30295, (W.D.N.Y. Feb. 17, 2021) (creditor made prima facie showing that cause existed to lift stay because debtor failed to contravene creditor's assertion that debtor was delinquent on mortgage payments); In re Fennell, 495 B.R. 232, 239 (Bankr. E.D.N.Y. 2012) (creditor made prima facie showing that cause existed to lift stay because debtor failed to contravene creditor's assertion that debtor was delinquent on mortgage payments). Thus, the stay should be lifted based upon the

fact that no mortgage payments have been made on the Property in more than a year yet the Obligors are receiving and misappropriating the rental payments being received from the tenants.

Analysis of the Sonnax Factors, weigh heavily in favor of lifting the automatic stay. The Sonnax factors include: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. 907 F.2d at 1286. Not all of the Sonnax Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. Spencer v. Bogdanovich (In re Bogdanovich), 292 F.3d 104, 110 (2d Cir. 2002; In re Residential Capital, LLC, 508 B.R. 838, 848 (Bankr. S.D.N.Y. 2014).

Here, the vast majority of the Sonnax factors weigh in favor of lifting the automatic stay.

**Sonnax Factor 1: Whether relief would result in a partial or complete resolution of the issue**: Here, lifting the stay would allow the NY Foreclosure Action to continue to be litigated to conclusion, allowing Spring Bank to foreclose on the Property and to allow Spring Bank to have the rent receiver immediately put in place to collect rent in the interim, which it is

entitled to do under the Loan Documents and pursuant to the NY Court's order granting the appointment of a temporary rent receiver. It is fundamentally unjust to permit any Obligor to collect the rents and use them for their own purposes, while not servicing the Loan, especially when all leases and rents have been assigned to Spring Bank pursuant to the Loan Documents.

**Sonnax Factor 2**: **The lack of any connection with or interference with the bankruptcy case**. Lifting the stay would not impact this case given that the Debtor does not have any interest or equity in the Property, but is only a guarantor for the loan from Spring Bank to 2467 Realty. Thus, Debtor will not receive any proceeds from any eventual foreclosure sale even if there were a surplus.

**Sonnax Factor 3**: **Whether the other proceeding involves the debtor as a fiduciary**. This factor is not applicable. Debtor is not a fiduciary in the NY Foreclosure Action.

**Sonnax Factor 4**: **Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action**. This factor favors lifting the automatic stay. The NY Foreclosure Action is a commercial foreclosure action which is routinely handled by New York State courts. The NY Court has the expertise to handle commercial foreclosure matters, and the NY Court has already ordered the appointment of a temporary rent receiver and granted default against Debtor and 2467 Realty. See In re Jones, 2024 U.S. Dist. LEXIS 139519 ("allowing PennyMac to proceed with the foreclosure action would allow resolution of the issues related to the Property and would not interfere with the bankruptcy case, state courts have the expertise to address the foreclosure issues involved in the bankruptcy proceedings; In re Residential Capital, LLC, 2012 Bankr LEXIS 3726 (Bankr. SDNY Aug. 14, 2012)(The state court is in the best position to handle foreclosure action).

**Sonnax Factor 5**:  **Whether the debtor's insurer has assumed full responsibility for defending**.  This factor is not applicable. The NY Foreclosure Action is a commercial foreclosure action and no insurance coverage is available to Debtor.

**Sonnax Factor 6**:  **Whether the action primarily involves third parties**.  This factor favors lifting the automatic stay.  There are three other parties in the NY Foreclosure Action, and non-debtor 2467 Realty is the borrower and mortgagor. Debtor is only a guarantor and has no interest in the Property.

**Sonnax Factor 7**:  **Whether litigation in another forum would prejudice the interests of other creditors.**  This factor favors lifting the automatic stay. Permitting the NY Foreclosure Action to proceed would not prejudice other creditors. Spring Bank has a secured first position mortgage on the Property and Debtor has no interest in the Property. Resolution of the NY Foreclosure Action will not divert funds from other creditors.

**Sonnax Factor 8**:  **Whether the judgment claim arising from the other action is subject to equitable subordination**.  This factor is not applicable. The NY Foreclosure Action will not result in any equitable subordination of the Debtor's creditors.

**Sonnax Factor 9**:  **Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor**.  This factor is not applicable because the Debtor has no interest in the Property.

**Sonnax Factor 10**:  **The interests of judicial economy and the expeditious and economical resolution of litigation**.  This factor weighs heavily in favor of lifting the stay. Here, if the stay is lifted, the NY Foreclosure Action which is well on its way, will be resolved shortly without any further delay, promoting the interests of judicial economy and efficiency.  It also facilitates the appointment of the rent receiver which is critical and time sensitive because the Obligors are wasting and misusing the rental income which has been assigned to Spring Bank.

**Sonnax Factor 11: Whether the parties are ready for trial in the other proceeding.** Default has already been entered against 2467 Realty and Debtor and Spring Bank is moving for summary judgment against the other defendants.

**Sonnax Factor 12: Impact of the stay on the parties and the balance of harms.** This factor weighs heavily in favor of lifting the stay. Allowing the NY Foreclosure Action to proceed will allow Spring Bank to obtain relief (which the Obligors have made time sensitive), without impacting the Debtor whatsoever, whereas denial of the motion will cause great harm to Spring Bank by preventing it from receiving rental income from the Property and delaying the inevitable entry of a foreclosure judgment and sale of the Property; again noting that Debtor has no interest whatsoever in the Property.

In In re Sterling, 2018 Bankr. LEXIS 18 (Bankr. S.D.N.Y. 2018) this Court granted the creditor's motion for relief from the automatic stay to allow a foreclosure action, writing:

> . . . granting relief from the automatic stay to proceed with the Foreclosure Judgement will result in a resolution of the issues relating to the Property and will not significantly interfere with the ongoing bankruptcy case, which is being administered by a Chapter 7 Trustee. The state court clearly has the expertise to address the foreclosure issues. See, e.g., In re Residential Capital, LLC, 2012 Bankr. LEXIS 3726, 2012 WL 3423285, at *7 (Bankr. S.D.N.Y. Aug. 14, 2012) (noting that state court is in the best position to address state law defenses to foreclosure). Any litigation related to the Foreclosure Judgement will not prejudice other creditors as there is no equity in the Property, and the Chapter 7 Trustee would be notified of any surplus monies resulting from the sale of the Property.

Here, every applicable Sonnax factor weighs heavily in favor of lifting the automatic stay.

## CONCLUSION

For the reasons set forth above, Spring Bank's motion for relief from the automatic stay should be granted, and the NY Foreclosure Action should be permitted to be litigated to conclusion without further delay.

4879-1524-9882, v. 2

Dated: New York, New York
        September 19, 2024

        KAPLAN LEVENSON, P.C
        *Attorneys for Creditor Spring Bank*

By: _____
        Steven M. Kaplan
        930 Sylvan Ave., Suite 100
        Englewood Cliffs, NJ 07632
        T: (212) 983.6900
        F: (212) 983.9210 Fax
        E: smk@kaplev.com